UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:10 CR 42 PPS |
| | ) | |
| MILTON L. HARVEY, JR. | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Before the Court is Defendant Milton L. Harvey Jr.'s Motion to Suppress Evidence [DE 22] that was seized from his truck following a traffic stop. The issue presented is mostly a credibility call pitting a police officer versus the defendant's cousin on the issue of whether there was probable cause to pull Harvey over for having a license plate light that was not properly illuminated. Because there is substantial corroborating evidence supporting the cousin's version of events and she was more credible in any event, and since the burden is on the Government, the motion to suppress is granted.

**FACTUAL BACKGROUND**

On February 24, 2010, around 3:25 a.m., Officer Jason Angel stopped at the traffic light at the intersection of 37th Avenue and Broadway in Gary, Indiana. As he waited at the light, Angel observed a white 2003 GMC Yukon proceeding northbound on Broadway. Angel testified that when the truck passed through the intersection it appeared to not have a rear license plate. So he pulled onto Broadway and caught up with the vehicle a couple blocks down the road. According to Angel, he then pulled within 10 feet of the rear of the truck, turned his

-1-

headlights off, and determined there was a license plate on the truck, but he couldn't read it because it was not illuminated. He claimed that the two bulbs on the back bumper that were supposed to illuminate the plate weren't working. He also clearly noticed a black bracket around the license plate, which he thought violated Indiana law because it covered the expiration date. As a result, Angel activated his overhead lights and curbed the vehicle.

Notably, in his police report, Angel claimed that the principal reason he pulled Harvey's truck over was the obstructed license plate. He said that the "vehicle's registration was partially obstructed by a black aftermarket license plate bracket resulting in its improper display." [DE 22-1.] He then added that the "license plate was not illuminated, as its factory license plate light(s) were not functioning." [*Id.*] At the suppression hearing, the Government advised the Court that it was no longer relying on the improperly displayed license plate as a basis for the traffic stop, instead relying only on Angel's belief that the truck's license plate was not illuminated.

Angel then exited his patrol car and approached the vehicle. He notified the driver, Defendant Harvey, of the traffic violations and asked him for his driver's license and registration. Angel also noticed another individual sitting in the front passenger seat of the vehicle, later identified as Donte Hunt. According to Angel, both individuals were acting odd; neither would look at Angel, instead focusing on the windshield, and both were unusually quiet. Angel also noticed that Harvey's hand was shaking when he handed Angel his registration. In addition, Angel smelled "a strong odor of burnt marijuana emitting from within [the] vehicle" and observed small pieces of green plant-like substance on the vehicle's center console and Harvey's clothing. [*Id.*] Angel testified that, based on his years of training and experience, he

can clearly recognize the smell of burnt marijuana and he knows what marijuana leaves look like.

Angel returned to his patrol car and called for assistance. A check of Harvey's driver's license revealed that it was suspended. Officer Michael Stewart soon arrived on the scene, and Angel relayed his observations and detection of the odor of burnt marijuana. Stewart testified that he had no idea why Angel initiated the traffic stop and did not know whether the lights around the license plate worked.

Both officers approached the vehicle, Angel on the driver's side and Stewart on the passenger's side. Angel advised Harvey that his license was suspended and both individuals were told to exit the vehicle. At that point, Angel claims that he asked Harvey and Hunt if they had been smoking marijuana, and both said no. Stewart could not recall if he heard Angel ask them if they had been smoking marijuana. But Stewart did notice the smell of marijuana in the vehicle, and he testified that Hunt appeared nervous, overly talkative, and in an excited state. Angel, however, did not see any signs that either of the individuals were high on marijuana.

Harvey and Hunt were placed in the back of Angel's patrol car while the officers searched the vehicle. During the search, Stewart noticed that the center console appeared loose and somewhat obstructed. As a result of their training and experience, both officers recognized that the center console in this particular truck has a natural void, which is an ideal place to hide firearms or narcotics. Sure enough, when the officers pulled up the center console, they discovered a small bag of marijuana and two firearms. The officers did not, however, find any evidence that either individual had been smoking marijuana in the car such as rolling papers, burnt marijuana residue, smoking paraphernalia, or marijuana cigarettes.

The officers quickly determined that neither Harvey nor Hunt possessed a handgun permit and both were convicted felons. They were then placed under arrest for possession of marijuana and possession of a firearm by a convicted felon, and Harvey was arrested for driving with a suspended license. Harvey was also cited for the traffic offenses, though he was not cited for driving under the influence of marijuana.

The same day as their arrest, Harvey and Hunt were separately interviewed by Bureau of Alcohol, Tobacco, and Firearms Special Agent Roger Crafton. Crafton testified at the suppression hearing, and both parties played video recordings of the interviews. During the interviews, Crafton explained to both Harvey and Hunt that he was not the "drug police" and thus was uninterested in their possession of a user quantity of marijuana. He told them he was interested in the guns, not the drugs. Crafton testified that either of them admitting that they smoked marijuana was not a big deal.

As a result, both Harvey and Hunt voluntarily spoke to Crafton about the events leading to their arrest. Crafton testified that their demeanor and body language indicated that they were cooperative and he did not recall disbelieving anything that either of them told him. Indeed, both Harvey and Hunt freely explained to Crafton where they bought the two firearms found in the truck and how much they paid for them.

During the interviews, Crafton independently asked Harvey and Hunt whether they smoked marijuana that night. Both stated that they had not; in fact, they told Crafton they had intended to smoke later that night but were pulled over before they had the chance. Harvey also told Crafton that Angel never asked them if they had been smoking marijuana, though Angel did ask if they had been drinking. In fact, according to Harvey, Angel never mentioned smelling

marijuana. Finally, Crafton asked Harvey whether he could see if the truck's license plate lights were working from his position inside the patrol car. Harvey told Crafton that he looked, but he could not tell if the lights were working. Harvey did note that one of the officers looked like he was taking pictures of that part of the vehicle.

Harvey called his cousin, Wahtesha Johnson, to testify. Johnson is a registered nurse who works at Porter Memorial Hospital in Valparaiso. Johnson picked up Harvey's truck from the tow lot the morning after Harvey's arrest. Johnson knew that the reason Harvey was pulled over was because one of his rear lights was supposedly not functioning properly. So as soon as she took possession of the truck, Johnson inspected the lights. Johnson testified that she carefully observed the lights around the license plate and determined that the lights worked properly. Johnson admitted that she has a very close relationship with Harvey.

At the suppression hearing, Harvey called an investigator employed by the Community Defender's Office to testify. According to the investigator, some time after the arrest, Harvey's truck was repossessed by a finance company. On May 28, 2010, the investigator, along with Harvey's attorney and Harvey's cousin (Ms. Johnson), went to a lot in Alsip, Illinois where Harvey's truck was awaiting auction. The investigator took photographs of the truck. These photos indicated that the truck's license plate lights worked properly. He then spoke to the lot's manager, Greg Mull. Mull told the investigator that the lights were fully functional as the manufacturer intended and, in fact, the plates themselves had a reflective material that allowed a small amount of light to illuminate the plates.

A couple of days later, the investigator returned to the lot at 8:00 p.m. He took pictures of the lights during night time conditions at a distance of 50 feet and testified that the lights

worked properly and the plate was clearly visible. Harvey also submitted photographs taken by his attorney after his arrest showing that the license plate lights worked properly.

On March 9, 2010, Harvey was released on bond. The parties stipulated that Harvey submitted to drug testing on that date, which included a marijuana test. The results of the test were negative. The parties also stipulated that marijuana can generally be detected in an individual anywhere between three and 30 days, though the length of time depends on a number of factors.

## **DISCUSSION**

Harvey moves to suppress the evidence found in his truck because Officer Angel did not have probable cause to pull him over. He also claims that even if Angel had probable cause to make the stop, the officers did not have probable cause to search the vehicle and, in any event, the search of the center console exceeded the scope of any probable cause. Because I find that Angel lacked probable cause to stop Harvey's truck, I need not address the other arguments.

Police may conduct a warrantless stop of an automobile if they have probable cause to believe a traffic violation has been committed. *Whren v. United States*, 517 U.S. 806, 810 (1996). The burden is on the government to establish probable cause. *United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000). "Probable cause is a fluid concept based on commonsense interpretations of reasonable police officers as to the totality of the circumstances known at the time the event occurred." *United States v. Ellis*, 499 F.3d 686, 689 (7th Cir. 2007) (internal quotations omitted). Thus, as long as an officer's belief that a traffic law has been violated is objectively reasonable, there is probable cause to make a traffic stop, even if the officer's belief turned out to be wrong. *United States v. Cashman*, 216 F.3d 582, 586-87 (7th Cir. 2000).

The Government argues that Officer Angel had probable cause to believe that Harvey was operating his truck without a functioning license plate light in violation of Indiana law. Indiana Code 9-19-6-4(e) states:

> Either a tail lamp or a separate lamp must be placed and constructed so as to illuminate the rear registration plate with a white light and make the plate clearly legible from a distance of fifty (50) feet to the rear. A tail lamp or tail lamps, together with a separate lamp for illuminating the rear registration plate, must be wired so as to be lighted whenever the head lamps or auxiliary driving lamps are lighted.

Ind. Code 9-19-6-4(e). Again, because this was a warrantless stop, the Government must show by a preponderance of the evidence that Angel had probable cause to believe that Harvey was in violation of Indiana Code 9-19-6-4(e) when he effectuated the traffic stop.

The only thing the Government relies on is the testimony of Officer Angel. According to Angel, when he pulled behind Harvey's truck at 3:25 a.m., he observed that the two lights around Harvey's license plate were not working in violation of Indiana law. Angel's testimony is not corroborated by Officer Stewart, who arrived on the scene after Angel initiated the stop and did not see if the lights on the truck worked. The Government did not produce any photographic evidence taken from either the patrol car or the officers, despite the fact that Harvey claimed in his post-arrest interview that he saw one of the officers taking pictures of the back of the truck. Nor did the Government produce a video tape from Angel's patrol car. (Some police cars are equipped with dashboard video cameras. It's unclear in this case, whether such a recording device existed in Angel's unit).

Harvey, of course, argues that Angel lacked probable cause to pull him over because his license plate lights were in fact working that night. He relies on the testimony of his cousin, Wahtesha Johnson, who took possession of Harvey's truck the morning after his arrest and

observed that the license plate lights worked just fine. Harvey also presented photographs from his attorney and an investigator, which were taken on separate occasions, both showing the lights functioning properly. And the investigator testified that the lights were in perfect condition and the license plate was clearly visible at night time from a distance of 50 feet.

Based on the testimony of the witnesses and the evidence presented at the suppression hearing, the Government has failed to meet its burden. First, as the fact finder, I am free to accept or reject any or all of a witness' testimony, *see United States v. Berthiaume*, 233 F.3d 1000, 1004 (7th Cir. 2000), and I credit the testimony of Harvey's witnesses. *See United States v. French*, 291 F.3d 945, 951 (7th Cir. 2002) (finding the district court is in the best position "to observe the verbal and nonverbal behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements, as well as confused or nervous speech patterns"). Their testimony and accompanying evidence supports Harvey's position that the lights on his truck worked properly when Angel pulled him over.

The Government questions Johnson's credibility because she is Harvey's cousin and they share a close relationship. Johnson – who is a registered nurse, well spoken, and presented very well on the witness stand – was a very credible witness. I observed her demeanor, her body language, and her recollection of the events, and notwithstanding her relationship with Harvey, I find her testimony entirely believable. *See id.*; *U.S. v. Etchin*, --- F.3d ---, 2010 WL 3024874, at *8 (7th Cir. 2010) ("While witnesses' motives are important, we have stressed that their reasons for taking the stand do not render their testimony inherently unreliable.") (internal quotations omitted); *United States v. Morse*, 2008 WL 1751382, at *5 (E.D. Wis. Apr. 11, 2008) ("It would

be manifestly unfair to discredit [the witness'] testimony . . . on the basis of his relationship with [the Defendant]."). Regrettably, I can't say the same about Officer Angel.

The Government also argues that because the photographs of Harvey's truck were taken after his arrest, Harvey had the motive and opportunity to fix the lights and then claim that Angel fabricated the probable cause. But this is conjecture, not evidence. While I concede that this is a possibility, the Government presents no evidence that would lead me to believe that the possibility is a reality.

The Government therefore relies exclusively on the testimony of Angel, and as I alluded to a moment ago, I have doubts about his credibility. First, Angel noted in his police report that he initially pulled over Harvey's truck because a bracket partially obstructed the license plate's registration. In reviewing the police report, that was plainly the principal reason for the stop. Angel then added – seemingly as a tag along[1] – that the license plate was not illuminated. But the Government has since abandoned its argument that problems with the license plate bracket provided probable cause for the traffic stop. And for good reason; the bracket did not violate Indiana law. *See United States v. McDonald*, 453 F.3d 958, 961-62 (7th Cir. 2006) (mistake of law cannot justify stop).

Conveniently, Angel's testimony at the suppression hearing suddenly suggested that the malfunctioning license plate lights was the main reason for pulling Harvey over all along. In fact, Angel testified that when he pulled behind Harvey's truck at 3:25 a.m., he could not read the license plate because it was too dark. Yet at the same time he wants me to believe he could

---

[1] *See United States v. Linear*, 2008 WL 4545338, at *3 (N.D. Ill. Oct. 8, 2008) (noting "the ubiquitous license-plate-light-out violation that is sometimes offered by traffic officers to bolster an otherwise shaky position.").

somehow see that a black bracket covered a single registration number in the top right corner of the plate. I don't buy it.

In addition, minor inconsistencies in Angel's testimony make me question his credibility. Angel testified that he smelled the "strong odor of burnt marijuana emitting from within [the] vehicle" when he approached Harvey's vehicle. [DE 22-1.] But no evidence of smoking paraphernalia, marijuana cigarettes, residue, or the like was recovered during the search of the truck. And both Harvey and Hunt told Special Agent Crafton that they had not been smoking that night; Crafton believed them, citing their cooperation along with their body language and demeanor, and based on the video recordings played at the suppression hearing, so do I. In fact, Harvey tested negative for marijuana after his arrest.

Also, Angel's testimony was at times inconsistent with Stewart's. For example, while Angel testified that he did not see any signs that Harvey and Hunt were high, noting only that they were unusually quiet and reserved, Stewart, on the other hand, observed that Hunt acted overly talkative and excited when the officers approached Harvey's truck together. Moreover, when the officers placed Harvey and Hunt into the patrol car, Angel claimed that he asked Harvey and Hunt if they had been smoking marijuana, and both said no. But Stewart didn't recall hearing this, and, according to Harvey, Angel never mentioned marijuana at any point during the traffic stop. While none of these incidents, by themselves, necessarily demonstrates that Angel's testimony is not credible, together they certainly raise doubt.

In sum, I observed the body language and demeanor of the witnesses and listened to the substance of their testimony. Harvey's witnesses were simply more credible than Angel, the sole

source of the Government's evidence.[2] *See French*, 291 F.3d at 951. And because the Government bears the burden – the evidence weighs in favor of Harvey – the Government failed to show by a preponderance of evidence that Angel had probable cause to stop Harvey's truck. *See Metropolitan Stevedore Co. v. Rambo,* 521 U.S. 121, 137 n. 9 (1997) (citing *Director, Office of Workers' Comp. Programs v. Greenwich Collieries,* 512 U.S. 267, 281 (1994) ("[W]hen the evidence is evenly balanced, the [party with the burden of persuasion] must lose ."); *see, e.g., Morse*, 2008 WL 1751382, at *5-6 (the government failed to meet its burden where both sides' witnesses were equally credible and the government failed to provide additional evidence of probable cause).

\* \* \* \*

At the conclusion of the hearing in the case, I stated on the record that I was inclined to grant the motion to suppress and that I found Ms. Johnson more credible than Officer Angel. I told the parties that I would put my reasons in writing, and this is that order. In the meantime, while this order was being drafted, I received an ex parte letter in the mail from Office Angel. In that letter he provides further explanation about the night in question and additional information about his background. I have made the letter part of the record, but have filed it under seal. Upon receipt of that letter I held a hearing and advised the parties that I received the letter. I told the parties that I believed the letter to be an improper extra-judicial effort to persuade me to

---

[2] In a last ditch effort, the Government argued at the suppression hearing that there was possibly a malfunctioning wire that caused the light to be out one day and working the next. But once again, this is conjecture, not evidence. Whatever it is, it certainly does not tip matters in the Government's favor.

reconsider my comments made from the bench at the suppression hearing.[3] As I stated on the record at the hearing, I have not taken the contents of the letter into consideration at all in my ultimate disposition of this matter.

## **CONCLUSION**

For the reasons I have outlined above, Defendant Milton Harvey's Motion to Suppress Evidence is **GRANTED**. [DE 22.]

**SO ORDERED**.

ENTERED: August 13, 2010.

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[3] To be clear, the Assistant U.S. Attorney assigned to this case played no role in Officer Angel's decision to contact me. The AUSA has always comported herself with the utmost of integrity and her work before this Court has always been exemplary.